UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY WHALE, et al.,<br><br>                                    Plaintiffs,<br><br>v.<br><br>LINCOLN MILITARY PROPERTY MANAGEMENT LP, et al.,<br><br>                                    Defendants. | Case No.:  22-cv-00160-CAB-JLB<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING PETITION FOR APPROVAL OF MINORS' COMPROMISES**<br><br>**[ECF No. 22]** |

Before the Court is Plaintiffs' second amended *ex parte* petition for approval of the compromises of the minor plaintiffs' disputed claims.[1]  (ECF No. 22.)  This Report and Recommendation is submitted to United States District Judge Cathy Ann Bencivengo pursuant to 28. U.S.C. § 636(b)(1) and Local Civil Rule 17.1 of the United States District Court for the Southern District of California.  After reviewing the petition and all

---

[1]     The Court initially struck Plaintiffs' original and first amended petitions because they included the full names and birthdates of the minor plaintiffs, in violation of Fed. R. Civ. P. 5.2, the Local Rules, and the Electronic Case Filing Administrative Policies and Procedures Manual.  (ECF Nos. 17; 20.)

supporting documents, and for the reasons discussed below, the Court **RECOMMENDS** that the District Court **GRANT** the petition.

## I.   BACKGROUND

Plaintiffs are a family of two parents and two minor children. (ECF No. 1-2 at 17, 19, 21.) Plaintiffs A.W. (7 years old) and M.S.[2] (12 years old) are minors (the "Minor Plaintiffs") appearing by and through their grandmother and court-appointed guardian *ad litem*, Judith Laverdiere. (ECF No. 1-2 at 16–19.)

Plaintiffs leased a property from Defendants located at 10105 Hooper Street, San Diego, CA 92124 (the "Leased Property"), and Minor Plaintiffs resided at the Leased Property at all times relevant to the complaint. (ECF Nos. 1-2 at 22 ¶¶ 1–4; 22-1 at 2 ¶ 4.) Plaintiffs allege that the "grossly negligent maintenance of the [L]eased [P]roperty by Defendants and employees of Defendants is responsible for Plaintiffs' exposure to black mold and other toxic chemicals which negatively impacted the health and well-being of Plaintiffs." (*Id.* ¶ 5.) Based on these allegations, Plaintiffs brought ten state-law claims against Defendants for negligence, nuisance, negligent infliction of emotional distress, breach of implied warranty of habitability, breach of implied covenant of quiet use and enjoyment, rent abatement, gross negligence, premises liability, intentional infliction of emotional distress, and fraud. (ECF No. 1-2 at 21 ¶¶ 51–157.)

On December 8, 2021, Plaintiffs commenced the instant action against Defendants Camp Pendleton & Quantico Housing, LLC ("Camp Pendleton"), Lincoln Military Property Management LP ("Lincoln"), and LPC Pendleton Quantico PM, LP ("LPC Pendleton") in San Diego Superior Court. (ECF No. 1 at 2 ¶ 1.) On February 3, 2022, Defendants removed the case to this Court. (ECF No. 1.) On February 10, 2022, Defendant Lincoln filed an answer. (ECF No. 2.) On February 16, 2022, Plaintiffs and Defendants

---

[2]   M.S. is listed incorrectly as "A.S." in the Notice of Removal and in the caption on CM/ECF. (*See* ECF No. 1.) In subsequent filings by Defendants and in Plaintiffs' instant petition, M.S.'s initials appear correctly. (*See, e.g.*, ECF Nos. 2; 22.)

Camp Pendleton and LPC Pendleton filed a Joint Motion to Dismiss. (ECF No. 7.) On February 17, 2022, District Judge Bencivengo dismissed Defendants Camp Pendleton and LPC Pendleton. (ECF No. 10.) On March 4, 2022, Defendant San Diego Family Housing LLC ("SDFH") filed an answer and was added as a party to this case. (ECF No. 12.)

On March 29, 2022, Magistrate Judge Daniel E. Butcher held an Early Neutral Evaluation Conference with Plaintiffs and the two remaining defendants, Lincoln and SDFH ("Defendants"). (ECF No. 15.) The case settled. (*Id.*) On March 30, 2022, Magistrate Judge Jill L. Burkhardt was assigned to handle the minors' compromises in this case. (ECF No. 14.)

On May 3, 2022, Plaintiffs filed the instant petition, which included California state MC-350 forms for each minor and set forth the terms of the settlement and the intended distribution of the settlement proceeds. (ECF No. 22.) In their MC-350 forms, Plaintiffs acknowledged that if the settlement is approved by the Court, Minor Plaintiffs will be forever barred from seeking any further recovery or compensation from the settling Defendants on the claims that are proposed to be dismissed. (ECF No. 22-1 at 8, 32.) Pursuant to the applicable briefing schedule, Defendants were required to file any opposition to the petition by May 5, 2022. (ECF No. 21.) Defendants do not oppose the petition.[3] (*See* ECF No. 23.) To assist in evaluating the instant petition, the Court held a hearing on May 26, 2022.[4] (ECF No. 27.)

///

---

[3]   Although Defendant SDFH is not listed as a party in Plaintiffs' petition nor Defendants' non-opposition, Defendants' counsel confirmed on the record at the hearing on May 26, 2022 (*see* ECF No. 27) that Defendant SDFH does not oppose Plaintiffs' petition. Additionally, counsel for both parties represented that, if approved, the settlement at issue will result in a dismissal with prejudice as to both remaining Defendants.

[4]   Plaintiffs Emily Whale, William Eric Whale, Jr., Minor A.W. and her guardian *ad litem*, Judith Laverdiere, and counsel Christian Ballmer Clark appeared on behalf of Plaintiffs. Counsel Timothy Alexander Hanna appeared on behalf of Defendants. Minor M.S. was excused from the hearing and did not appear. (*See* ECF Nos. 26; 27.)

## II. LEGAL STANDARD

It is well settled that courts have a special duty to safeguard the interests of litigants who are minors in the context of settlements proposed in civil suits. *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011); *see also* Fed. R. Civ. P. 17(c) (district courts "must appoint a guardian *ad litem*—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented [by a guardian conservator or the like] in an action."). "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Robidoux*, 638 F.3d at 1181 (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)); *see also Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian *ad litem*.").

With respect to the court's duty to safeguard, Local Rule 17.1(a) provides that "[n]o action by or on behalf of a minor or incompetent will be settled, compromised, voluntarily discontinued, dismissed or terminated without court order or judgment." CivLR. 17.1(a). The court is required to determine whether the settlement is in the best interests of the minor, considering not only the fairness of the settlement, but the structure and manner of the plan for the payment and distribution of the assets for the benefit of the minor. Under the Local Rules, parties must submit the settlement to a magistrate judge for preliminary review. *See* CivLR 17(a) ("All settlements and compromises must be reviewed by a magistrate judge before any order of approval shall issue.").

The Ninth Circuit established that courts reviewing the settlement of a minor's <u>federal claim</u> should "limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1181–82. They should "evaluate the fairness of each minor plaintiff's net recovery

without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard." *Id.* at 1182 (citing *Dacanay*, 573 F.2d at 1078). "So long as the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties." *Robidoux*, 638 F.3d at 1182.

Significantly, the Ninth Circuit limited its decision in *Robidoux* to "cases involving the settlement of a minor's federal claims." *Id.* at 1181–82 (emphasis added). Where a settlement involves state law claims, federal courts are generally guided by state law rather than *Robidoux*. *J.T. by & Through Wolfe v. Tehachapi Unified Sch. Dist.*, No. 16cv01492-DAD-JLT, 2019 WL 954783, at *2 (E.D. Cal. Feb. 27, 2019). *See also A.M.L. v. Cernaianu*, No. LA CV12-06082-JAK-RZx, 2014 WL 12588992, at *3 (C.D. Cal. Apr. 1, 2014) (collecting cases). The *A.M.L.* court noted that, although federal courts generally require claims by minors to "be settled in accordance with applicable state law," the Ninth Circuit in *Robidoux* held such an approach "places undue emphasis on the amount of attorney's fees provided for in a settlement, instead of focusing on the net recovery of the minor plaintiffs." *Id.* at *2 (quoting *Robidoux*, 638 F.3d at 1181) (other citation omitted). *But see Mitchell v. Riverstone Residential Grp.*, No. Civ. S-11-2202-LKK-CKD, 2013 WL 1680641, at *1 (E.D. Cal. Apr. 17, 2013) ("[A] number of district courts have applied the rule provided in *Robidoux* to evaluate the propriety of a settlement of a minor's state law claims as well") (collecting cases).

The California Probate Code provides the applicable statutory scheme for approval of a minor's compromise under state law. *See* Cal. Prob. Code §§ 3601 *et seq*. Under California law, the Court is tasked with evaluating the reasonableness of the settlement and determining whether the compromise is in the best interest of the minor. *A.M.L.*, 2014 WL 12588992, at *3 (citations omitted). In carrying out that task, the Court is afforded "broad power . . . to authorize payment from the settlement—to say who and what will be paid from the minor's money—as well as direct certain individuals to pay it." *Goldberg v.*

*Superior Court*, 23 Cal. App. 4th 1378, 1382 (1994). *See also Pearson v. Superior Court*, 202 Cal. App. 4th 1333, 1340 (2012) (explaining that the purpose of requiring court approval of a minor's settlement is to "allow[] the guardians of a minor to effectively negotiate a settlement while at the same time protect[ing] the minor's interest by requiring court approval before the settlement can have a binding effect on the minor").

Because the substantive claims in this case are governed by California law, the Court will review the settlement with an eye towards the state standard, which focuses on the "best interests of the minor." However, to ensure that all potentially relevant factors are considered, the Court will also apply the *Robidoux* standard of determining whether the net amount distributed to the minor plaintiffs (without regard to the proportion of the settlement allocated to adult co-plaintiffs or attorney's fees) is "fair and reasonable." *See A.M.L.*, 2014 WL 12588992, at *3 (finding it unnecessary for the court to resolve whether *Robidoux* or state rules applied to approval of minor's compromise in case involving state tort law claims, because the proposed settlement would satisfy both standards).

### III. DISCUSSION

To fulfill the special duty of the court to safeguard the interests of minors in the context of settlements proposed in a civil suit, this Court will analyze the proposed settlement, the method of disbursing Minor Plaintiffs' net recoveries, and the proposed attorney's fees and costs.

**A. Proposed Net Settlement Amounts for Minor Plaintiffs**

    1. Terms of Settlement

As set forth in the petition, the total settlement amount is $137,500. (ECF No. 22 at 4.) The proceeds are to be divided as follows: $127,500 to Plaintiffs Emily Whale and William Eric Whale, Jr. (Minor Plaintiffs' parents); and $5,000 each to Minor Plaintiffs. (*Id.*) Minor Plaintiffs "experienced various symptoms believed to be caused by the mold infestation [of the Leased Property, including] frequent headaches and migraines, along with numerous bloody noses." (ECF No. 22-1 at 2 ¶ 6.) Minor Plaintiffs' headaches were treated successfully with over-the-counter medications. (ECF No. 27.) Minor Plaintiffs

also "possibly contracted allergies to mold." (ECF No. 22-1 at 2 ¶ 6.) M.S. recovered completely and "did not receive any special care for the symptoms he experienced." (*Id.* at 31 ¶¶ 7–8.) Although A.W. suffers from Chiari Malformation 1 and Syringomyelia, "A.W.'s treating physicians have not opined whether the mold exposure caused these injuries, exacerbated the injuries, or if the injuries are completely unrelated to the mold exposure." (*Id.* at 7 ¶ 8.) Plaintiffs' counsel represented at the hearing on May 26, 2022, that the investigation conducted to date has yielded no evidence that A.W.'s Chiari Malformation 1 and Syringomyelia were caused or exacerbated by mold exposure.[5] (ECF No. 27.) Plaintiffs Emily Whale and William Eric Whale, Jr.'s injuries include "medical issues and damages related to overpayment for the Leased Property . . . [and] damages for costs for moving, cleaning personal property via an independent restoration company, and replacing personal property that was exposed to mold spores but could not be effectively cleaned."[6] (ECF No. 22-1 at 2 ¶ 7.)

Minor Plaintiffs' counsel seeks $1,250 in attorney's fees from each minor, a sum that represents 25% of each minor's gross settlement. (ECF No. 22-1 at 10 ¶ 13; 11 ¶¶ 14, 16; 34 ¶ 13; 35 ¶¶ 14, 16.) Each minor's net settlement after deducting $1,250 of attorney's fees is $3,750. (*See* ECF No. 22 at 4.)

    2. Analysis

Minor Plaintiffs' net recoveries of $3,750 each reflect fair compensation for their relatively modest damages. Minor Plaintiffs suffered from headaches, sometimes accompanied by nausea, that responded well to over-the-counter medications. (ECF No. 27.) They also suffered from periodic nose bleeds. (*Id.*) As stated at the hearing, Minor Plaintiffs and their parents moved into a new unit on one of Defendants' properties in

---

[5] Consequently, the Court does not consider these medical conditions, or the treatment for them, to be part of A.W.'s damages.

[6] Plaintiffs represented at the hearing that a substantial portion of the parents' damages was attributable to overpayment for the property. (ECF No. 27.)

October 2021 and are no longer in contact with any mold. (*Id*.) Minor Plaintiffs' mother, Emily Whale, also represented at the hearing that both minors have not experienced any adverse consequences of their mold exposure since moving to their new home. (*Id*.)

The proposed recoveries are similar to the approved recoveries garnered by settling minors in two other cases from this District which the Court finds directly applicable. Both cases were brought by the same plaintiffs' counsel, involved mostly the same defendants, and arose out of very similar mold allegations. *See Smith, et al. v. AMETEK, Inc., et al.*, No. 20cv02359-TWR-BLM, 2021 WL 4077580, at *1–3 (S.D. Cal. Sept. 8, 2021), *adopted*, No. 20cv02359-TWR-AGS, 2021 WL 4805532 (S.D. Cal. Oct. 14, 2021) (finding fair and reasonable net settlement amounts of $3,669.50 and $2,206.72 for minor plaintiffs who underwent "wheezing, coughing, and allergic reactions" as a result of the failure of defendants to adequately clean mold, but who fully recovered from the mold exposure); *Doe v. Lincoln Mil. Prop. Mgmt. LP*, No. 20cv00224-GPC-AHG, 2020 WL 5587488, at *1, *10 (S.D. Cal. Sept. 18, 2020), *adopted*, No. 20cv00224-GPC-AHG, 2020 WL 5810168 (S.D. Cal. Sept. 30, 2020) (finding net recovery of $1,277.04 to be fair and reasonable where one minor plaintiff suffered minor respiratory illnesses due to mold exposure, and finding a net recovery of $19,793.29 appropriate for second minor plaintiff whose "exposure to toxic mold also exacerbated his autism, regressing his behavioral speech therapy progress" and caused his "withdraw[al] from school").

The proposed settlement allows for the certainty of recovery for Minor Plaintiffs, as opposed to the uncertainty associated with a trial. Here, Minor Plaintiffs would likely encounter "several costly medical battles to prove causation and damages, not to mention the potential delay caused by additional years of litigation." *See Smith*, 2021 WL 4077580, at *2. Accordingly, based upon a consideration of the facts, Minor Plaintiffs' claims, the risks associated with trial, and the recoveries in similar actions, the Court concludes the proposed settlement is fair and reasonable under both California and federal law standards.

///

///

### B. Method of Disbursement

Courts can use a wide variety of methods for the disbursement of settlement funds to a minor. *See* Cal. Prob. Code §§ 3600 *et. seq.*[7] Here, the proposed procedure for disposition of the funds—delivering them to be held in trust by the parents until Minor Plaintiffs reach the age of majority—is consistent with the California Probate Code, because the resulting net estate for each minor is less than $5,000. *See* Cal. Prob. Code §§ 3401, 3611(e); (ECF No. 22 at 4.)

### C. Attorney's Fees and Costs

Attorney's fees and costs are typically controlled by statute, local rule, or local custom. Under California law, courts are required to approve the attorney's fees to be paid for representation of a minor. *See* Cal. Prob. Code § 2601; Cal. Rule of Ct. 7.955.[8]

Minor Plaintiffs' counsel seeks $1,250 in attorney's fees from each minor, a sum that represents 25% of each minor's gross settlement. (ECF No. 22-1 at 10 ¶ 13; 11 ¶¶ 14, 16; 34 ¶ 13; 35 ¶¶ 14, 16.) No hard costs will be deducted from either of Minor Plaintiffs' settlements. (ECF No. 22 at 4.) The Court finds the requested amount of attorney's fees is reasonable and does not suggest that the settlement was unfair. *See Napier v. San Diego*, No. 15-cv-581-CAB-KSC, 2017 WL 5759803, at *9 (S.D. Cal. No. 28, 2017) ("Generally, fees in minors['] cases have historically been limited to 25% of the gross recovery.").

///
///
///
///

---

[7] California probate law governs the proposed methods of disbursement of minors' settlement funds. *See* CivLR.17.1(b)(1).

[8] Similarly, San Diego Superior Court Civil Rule 2.4.6.2 states that, regarding a minor's compromise, "the court will determine the amount of costs, expenses, and attorney's fees to be allowed from the proceeds of the settlement. Absent extraordinary circumstances, attorney's fees will not exceed 25% of the gross proceeds of the settlement."

### IV.   CONCLUSION

For the reasons discussed above, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) adopting this Report and Recommendation; and (2) **GRANTING** Plaintiffs' *Ex Parte* Petition for Approval of Minors' Compromises (ECF No. 22).

**IT IS ORDERED** that, pursuant to 28 U.S.C. § 636(b)(1)(C), any party to this action may file written objections with the Court and serve a copy on all parties no later than **June 14, 2022**.  The document should be captioned "Objections to Report and Recommendation."  If objections are filed, any reply is due by **June 21, 2022**.

Although the federal statutory scheme provides for a 14-day objections period to a Magistrate Judge's Report and Recommendation, the Court notes that the petition in this case is unopposed.  (*See* ECF No. 23; *supra* n. 3, at 3.)  Therefore, **if all parties wish to waive the objections period, they should file a joint stipulation to that effect immediately**, to allow the Court to adopt this Report and Recommendation without further delay.  However, there shall be no adverse consequences to any party who files objections or otherwise chooses not to waive the objections period.

**IT IS SO ORDERED.**

Dated:  May 31, 2022

Hon. Jill L. Burkhardt
United States Magistrate Judge